```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD N. BYER,

                    Plaintiff,              09-CV-0255

v.                                          **DECISION
                                            and ORDER**
MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____
```

## **INTRODUCTION**

Plaintiff Richard N. Byer ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB"). Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") John P. Costello denying his application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) ("Rule 12(c)"), on grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings, on grounds that the Commissioner's decision was erroneous. This Court finds that the decision of the Commissioner for the reasons set forth below, is supported by substantial

evidence, and is in accordance with applicable law and therefore the Commissioner's motion for judgment on the pleadings is hereby granted.

## BACKGROUND

On September 1, 2006, Plaintiff, at the time a 47 year-old grinding machine tender and tow truck driver, filed an application for Disability Insurance Benefits under Title II of the Act claiming a disability onset date of November 2, 1995, but amended his complaint to list his disability onset date as September 3, 1999. (R. 27)[1]. Plaintiff's application to the Commissioner was denied and he then moved for a hearing which was held before ALJ Costello, on April 16, 2007. (R. 66-70, 23-65). In a decision dated May 31, 2007, the ALJ determined that the Plaintiff was not disabled. The ALJ's decision became final when the Social Security Appeals Council affirmed the decision of the ALJ on March 9, 2009. On March 19, 2009, Plaintiff filed this action pursuant to § 405(g) of the Act for review of the final decision of the Commissioner.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Disability Insurance Benefits and Supplemental Security Income. Additionally, the section

---

[1] Citations to "R." refer to the Record of the Administrative Proceedings

directs that when considering such claims, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex.1983) (citation omitted). Defendant asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

**II. <u>The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence within the record and is proper as a matter of law</u>**

The ALJ in his decision, found that Plaintiff was not disabled within his insured coverage period, ending on December 31, 2000 pursuant to the relevant portions of the Social Security Act. A disability is defined within 42 U.S.C. § 423(d) to be the:

> *"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."* 42 U.S.C. § 423(d) (1991).

In determining the threshold question of Plaintiff's disability, the ALJ adhered to the Administration's 5-step sequential analysis for evaluating assignments of disability benefits.[2] See 20 C.F.R. § 404.1520. Having gone through the evaluation process, the ALJ found (1) Plaintiff was not currently engaged in substantial gainful activity, and has not since his (amended) alleged onset date of September 3, 1999; (2) Plaintiff had suffered from a "severe impairment" to his back; (3) During the time of coverage, Plaintiff's impairment did not meet or equal

---

[2] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity ("RFC") to perform his past work; and (5) determine whether the claimant can perform other work. See id.

those listed within 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 416.920(d)); (4) During the period of disability coverage, Plaintiff was unable to perform his past relevant work; (5) During the period of disability coverage, there were other jobs that existed in both the local and national economy that the Plaintiff could have performed. (R. 60- 62).

### A. **The ALJ had fully developed the record for review**

The Plaintiff argues that the ALJ did not fully develop the record regarding his duty to re-contact Plaintiff's chiropractor Dr. Esposito, and Plaintiff's treating physician, Dr. Rizzo before making his decision pursuant to SSR 96-2p.

Based on the evidence within the record, and the fact that the ALJ was able to reach a decision on that evidence, I hold that there was no need to obtain further evidence, even if there is inconsistent evidence within the record.[3] 20 C.F.R. § 404.1527(c)(2).

The record shows approximately 70 pages of documentation from Dr. Esposito (R. 252-53, 309-316, 318-377), and at least two other times in which the Commissioner had contacted Dr. Esposito in order to obtain office records regarding the Plaintiff on October 30, 2006 and on November 13, 2006. However, discussed at length below, a chiropractor is not a acceptable medical source and therefore

---

[3] If there is an inconsistent evidence within the record (including medical evidence), that evidence will be weighed against the consistent evidence to see whether a decision of disabled is required

Dr. Esposito's opinion will not be given any special weight. 20 C.F.R. § 404.1513(a).

In regard to Dr. Rizzo, initially on October 30, 2006 his [Rizzo] office was contacted to provide medical treatment records to the Agency, which were delivered on November 9, 2006. (R. 262). A letter was also sent by the ALJ on February 12, 2007 to Dr. Rizzo inquiring as to Plaintiff's impairments, results of laboratory and diagnostic tests, treatment notes as well as Dr. Rizzo's assessment of Plaintiff's residual functional capacity. (R. 292). Lastly, there is approximately 30 pages of medical records that was obtained regarding the Plaintiff's treatment history within Rizzo's office. (R. 239-50, 292-308). Together with the initial letter from the Commission, the letter from the ALJ to Dr. Rizzo and the existing information within the record, the Commissioner has met his obligation to make a reasonable effort to request medical evidence in regard to the Plaintiff. 20 C.F.R. § 404.1512(d)(1).

If the ALJ does not notice any obvious gaps within the record, they are under no obligation to seek additional information before rejecting claimant's application. (Comm. Reply Memo. at 3 citing Rosa v. Callahan, 168 F.3d 72, 79, n.5 (2d Cir. 1999)). I therefore conclude that there were no obvious gaps within the record regarding Plaintiff's medical evidence and therefore the ALJ was not required to develop the record any further.

In addition, if Plaintiff wanted to assure specific medical records to within the administrative record, he was given the opportunity to submit additional evidence. (R. 9-11). Because of the extent of the communication that was held between the ALJ and the doctors, I find that the ALJ was not under any obligation to re-contact either doctor for any additional information as he had enough medical evidence to reach his decision. 20 C.F.R. § 404.1512(e).

**B. The ALJ properly evaluated the medical evidence in the record**

The ALJ properly relied upon substantial objective medical evidence in weighing the opinions of Plaintiff's physicians.[4] The ALJ afforded controlling weight to the opinion of Plaintiff's neurologist, Dr. James G. Egnatchik in reaching his decision. Though the ALJ made an error in not considering the medical records of Dr. Frank Esposito, Plaintiff's chiropractor, the inclusion of these records would not alter the decision of this court since opinions from such sources (chiropractor) do not constitute an "acceptable medical source" in which an ALJ may rely in determining

---

[4] Only medical evidence directed at Plaintiff's condition at the time of coverage can be considered within the decision. Bastian v. Schweiker, 712 F.2d 1278, 1282, n.4. Though the medical evidence may be relevant to Plaintiff's current condition, he must establish disability on or before December 31, 2000 (the insured period) in order to qualify for DIB. Since Plaintiff's coverage expired on December 31, 2000, medical opinions after this date will not be considered. Evidence that an impairment reached disabling severity after a claimant's insured status expired cannot be the basis for the determination of the entitlement to DIB, even if the impairment existed before the insured period expired. Arnone v. Bowen, 882 F.2d 34, 37-38 (2d 1989).

Plaintiff's disability. 20 C.F.R. 404.1527(a)(2). The Social Security Rulings ("SSR") categorize a chiropractor as an "other source" of which to gather medical evidence. The SSRs state that "other sources" may not establish an existence of a medically determinable impairment, but that their special knowledge of the individual may be considered when reaching a decision on claimant's ability to function. SSR 06-03p. In addition, Dr. Esposito first stated his opinion as to Plaintiff's state of disability after the insured period on November 11, 2006, thus rendering Dr. Esposito's opinion irrelevant. (R. 201).

The SSR requires that a treating physician's opinion be controlling if it is, "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). Because the opinions of Plaintiff's treating physician were not made until MRI results were considered (as well as being supported by additional evidence within the record), I find that the ALJ gave proper weight to both Dr. Egnatchik and Dr. Esposito's opinions.

**B. The ALJ reached his decision based on substantial evidence within the record**

On November 2, 1995, Plaintiff was involved in a motor vehicle accident, and after which he had an MRI performed that showed he

Page -8-

had possible degenerative disease at the L4-5 and L5-S1 levels of his lower back. (R. 16).  On January 29, 1998, Plaintiff met with Dr. Egnatchik, a neurosurgeon, who discussed two possible diagnoses with the Plaintiff: chronic cervical conditions and considerable paraspinal muscle spasms secondary to degenerative disk disease in his lower back.  (R. 16, 233-34).  Dr. Egnatchik ordered an additional MRI test of the lumbar and cervical regions in order to further diagnose Plaintiff's condition and in the interim, he had concluded Plaintiff to be totally disabled on January 30, 1998. (R. 234).

The follow-up MRI performed on May 6, 1998 showed a L5-S1 disk herniation and a mild broad-based L4-5 disk herniation. (R. 232). About a month later, Plaintiff met again with Dr. Egnatchik regarding the follow-up MRI because Plaintiff still complained about lower back pain that followed any sort of intermittent or prolonged bending.  As the result of this meeting, Dr. Egnatchik revised his former opinion of Plaintiff's disability status and concluded that he "doubted highly that he [plaintiff] will be able to return to his former line of employment...". (R. 231). Plaintiff then met with Dr. Egnatchik again before the insured period ended on October 3, 2000, in which the doctor had recommended an update of Plaintiff's diagnostic studies. (R. 269). The coverage period then ended with the MRI's being updated and

still showing degenerative disk disease at the same levels as the prior scans had shown.  (R. 273).

As previously stated, (F.N. 4 INFRA) evidence that Plaintiff's impairment reached a disabling level after the insured period cannot be a basis for determination of entitlement to DIB, even if the impairment may have existed before the expiration of the insured period.  <u>Arnone v. Bowen</u>, 882 F.2d 34, 37-38 (2d Cir. 1989); <u>Gold v. Secretary of Health, Ed. and Welfare</u>, 463 F.2d 38, 40-41 (2d Cir. 1972).

### i. **The ALJ properly assessed Plaintiff's credibility**

Plaintiff claims the ALJ did not properly assess his subjective complaints in concluding that "Plaintiff's testimony regarding his impairments ... on his ability to work were not entirely credible." (Pl. Br. At 21).  Examination of the record revealed that the ALJ had properly evaluated Plaintiff's credibility and followed the criteria articulated within SSR 96-7p.

The Commissioner correctly points out within his brief that Plaintiff had only taken anti-inflammatory drugs for pain relief, that Plaintiff had waited 10 years after the alleged onset of his impairments to file for DIB, Plaintiff claimed that the New York State Department of Vocational and Educational Services to Individuals with Disabilities (VESID) turned him away because he could not be trained for a desk job, and also that he [Plaintiff] spent most of the day laying down and was unable to do housework,

yet was still able to drive. (Commissioner's Br. At 6). The ALJ had fully considered Plaintiff's credibility within the requirements of the Commissioner's regulations and rulings. SSR 96-7p, 20 C.F.R. § 404.1529(c).

Dr. Egnatchik, Plaintiff's treating physician prior to and during the relevant period opined that Plaintiff was a candidate for sedentary work. An examination of his records and reports for that period support this conclusion. (R. 231, 233-34, 266-68).

**C. Substantial evidence within the record supports the Commissioners final decision that Plaintiff was not disabled with the meaning of the Act**

Once it has been established that the Plaintiff does not have the residual functioning capacity ("RFC") to return to his prior place of employment, the burden is shifted and placed upon the Commissioner to see whether the Plaintiff is capable of performing any other work. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996). In satisfying this burden, the Commissioner may rely on the testimony of a Vocational Expert ("VE") to show what jobs exist in the national economy that the Plaintiff may perform. Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997). In addition to the Vocational Expert, the ALJ had to consider Plaintiff's RFC, age, education, and work experience, all in conjunction with the Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, Appendix 2.

During the Administrative Proceedings, a VE was brought in to testify as to whether there were jobs that the Plaintiff could perform with his physical limitations, and to assist the ALJ in reaching a decision as to whether Plaintiff was "disabled" or "not-disabled" within Plaintiff's specific vocational profile. (R. 18).

The VE was posed a series of hypothetical questions that involved that same limitations as Plaintiff's. The VE first stated that a person with the same RFC as Plaintiff would not be able to return to the his past work. (R. 60-61). The VE opined that there were jobs in the national and local economy that a person of the same RFC as Plaintiff would be able to perform, such as light, unskilled and sedentary, unskilled work. (R. 61-62). The VE testified that with all of the limitations that an individual such as the Plaintiff may have, the job opportunities might consist of: "small products assembler II (DOT # 739.687-030), a job requiring a light level of exertion with an SVP-2 (unskilled) of which there were 115,000 positions in the national economy and 350 in the Finger Lakes region; and ticket seller (DOT # 221.167.030) SVT-2 (unskilled) of which there were 108,000 positions nationally and 800 regionally." (R. 19).

Based on substantial evidence within the record, and the testimony of the VE, I find that the ALJ properly concluded that the Commissioner had shown there to be additional jobs within the economy in which the Plaintiff can find employment.

Accordingly, I find that the ALJ's decision that Plaintiff was not qualified to receive disability insurance benefits up until the extinguishment of his insured coverage on December 31, 2000 is supported by substantial evidence in the record.

**CONCLUSION**

For the reasons set forth above, I grant the Commissioners motion for judgment on the pleadings. Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         June 18, 2010